# EXHIBIT A

357?

AB 5-21-13 254 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIA DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>(a) GENERAL FORMS | **CASE NUMBER**<br>13-05669CA30 |
| **PLAINTIFF(S)**<br><br>Ana Lorena Nuila de Gadala-Maria, et al. | VS.   **DEFENDANT(S)**<br><br>Willis Group Holdings Public Limited<br>Company, et al. | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and copy of the complaint or petition in this action on defendant(s): Willis of Colorado Inc.,

By Serving Registered Agent: The Corporation Company, 1675 Broadway, Suite 1200

Denver, CO 80202

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Curtis B. Miner

whose address is: Colson Hicks Eidson, 255 Alhambra Circle, PH, Coral Gables, FL 33134

Ph: 305-476-7400; Fax: 305-476-7444

within 20 days " Except when suit is brought pursuant to s. 768.28, Florida Statutes; if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days." after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| HARVEY RUVIN<br>CLERK OF COURTS | BY: _____<br>DEPUTY CLERK | FEB DATE 2013 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| :-- |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | CIVIL COVER SHEET | CASE NUMBER<br>13 - 05669 CA 30 |
| :-- | :-: | :-- |

| PLAINTIFF<br><br>Ana Lorena Nulla de Gadala-Maria, et al. | VS. DEFENDANT<br><br>Willis Group Holdings Public Limited Company, et al. | CLOCK IN<br><br>THE ORIGINAL FILED<br>ON   FEB 1 4 2013<br>IN THE OFFICE OF<br>CIRCUIT COURT MIAMI-DADE CO.<br>CIVIL DIVISION |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☐ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ Negligence - Other
  ☐ 097 - Business Governance
  ☐ 098 - Business Torts
  ☐ 099 - Environmental/Toxin Tort
  ☐ 100 - Third Party Indemnification
  ☐ 101 - Construction Defect
  ☐ 102 - Mass Tort
  ☐ 103 - Negligent Security
  ☐ 104 - Nursing Home Negligence
  ☐ 105 - Premises Liability - Commercial
  ☐ 106 - Premises Liability - Residential
  ☒ 107 - Negligence - Other
☐ Real Property/Mortgage Foreclosure
  ☐ 108 - Commercial Foreclosure $0 - $50,000
  ☐ 109 - Commercial Foreclosure $50,001 - $249,999
  ☐ 110 - Commercial Foreclosure $250,000 or more
  ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
  ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
  ☐ 113 - Homestead Residential Foreclosure $250,000 or more
  ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
  ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
  ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
  ☐ 117 - Other Real Property Actions $0 - $50,000
  ☐ 118 - Other Real Property Actions $50,001 - $249,999

☐ 119 - Other Real Property Actions $250,000 or more
☐ Professional Malpractice
  ☐ 094 - Malpractice - Business
  ☐ 095 - Malpractice - Medical
  ☐ 096 - Malpractice - Other professional
☐ Other
  ☐ 120 - Antitrust/Trade Regulation
  ☐ 121 - Business Transactions
  ☐ 122 - Constitutional Challenge - Statute or Ordinance
  ☐ 123 - Constitutional Challenge - Proposed amendment
  ☐ 124 - Corporate Trust
  ☐ 125 - Discrimination - Employment or Other
  ☐ 126 - Insurance Claims
  ☐ 127 - Intellectual Property
  ☐ 128 - Libel/Slander
  ☐ 129 - Shareholder Derivative Action
  ☐ 130 - Securities Litigation
  ☐ 131 - Trade Secrets
  ☐ 132 - Trust Litigation
☐ 133 - Other Civil Complaint
  ☐ 009 - Bond Estreature
  ☐ 014 - Replevin
  ☐ 024 - Witness Protection
  ☐ 080 - Declaratory Judgment
  ☐ 081 - Injunctive Relief
  ☐ 082 - Equitable Relief
  ☐ 083 - Construction Lien
  ☐ 084 - Petition for Adversary Preliminary Hearing
  ☐ 085 - Civil Forfeiture
  ☐ 086 - Voluntary Binding Arbitration
  ☐ 087 - Personal Injury Protection (PIP)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

REMEDIES SOUGHT (check all that apply):
- ☒ monetary;
- ☐ non-monetary declaratory or injunctive relief;
- ☐ punitive

NUMBER OF CAUSES OF ACTION: [ 3 ]
(specify) 1. Information negligently supplied for the guidance of others; 2. Negligent misrepresentation; and 3. aiding and abetting fraud.

IS THIS CASE A CLASS ACTION LAWSUIT?
- ☐ Yes
- ☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
- ☒ No
- ☐ Yes   If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?
- ☒ Yes
- ☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____CBM_____   Florida Bar # ____885681____
            Attorney or party                              (Bar # if attorney)

Curtis B. Miner                                    2/14/13
(type or print name)                               Date

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

13 - 05669CA 30

ANA LORENA NUILA DE GADALA-
MARIA,
JOSE NUILA,
JOSE NUILA FUENTES,
GLADYS BONILLA DE NUILA,
GLADYS ELENA NUILA DE
PONCE,
JOSE RICARDO NUILA BONILLA,
VICTOR JORGE SACA TUEME,
CATALINA NUSTAS DE SACA,
CLAUDIA LIZETE SACA DE
GALLEGOS,
JORGE VICTOR SACA NUSTAS,
MONICA EMELY SACA NUSTAS,
KATIA MARIA GHATTAS DE SACA,
MONICA EMELY SACA,
ELIAS SACA TUEME,
EILEEN NICOLLE SACA DE
GIACOMAN,
EDITH MARLEYN SACA
BALLESTEROS,
JENNY SOREL SACA
BALLESTEROS,
OSCAR KAFATI,
MAURICIO BIGIT POSADA,
JOSE ANTONIO MIGUEL
BANDEK,
EDUARDO ELIAS MIGUEL GIHA,
ERNESTO URCUYO ABARCA,
LORNA MARIA LACAYO DE
URCUYO,
STEMICH INTERNATIONAL
HOLDINGS CORP.,
JOSE OFILIO LACAYO PEREZ,
CELIA JOSEFINA VIVAS DE

THE ORIGINAL FILED
ON FEB 1 4 2013
IN THE OFFICE OF
CIRCUIT COURT MIAMI-DADE CO.
CIVIL DIVISION

LACAYO,
ARIEL LACAYO,
LEONEL LACAYO,
MERCEDES ARGUELLO DE
LACAYO,
INIZIA HOLDINGS, S.A.,
OCEAN WATERS HOLDINGS, S.A.,
BERNARDO RAMON CHAMORRO
CUADRA,
RHINA AUXILIADORA URCUYO
DE CHAMORRO,
BRAULIO VARGAS,
FRANCISCO ROBERTO DUEÑAS
FORTUNA,
GUILLERMO ACETO MARINI,
MARTA ORIANI DE GUTIERREZ
LOPEZ,
JOSE ROLANDO GUTIERREZ
ORIANI,
CARLOS ARMANDO GUTIERREZ
ORIANI,
ARELY ARGUELLO DE
GUTIERREZ,
DORA ERNESTINA ECHEVARRIA
CAÑAS DE GUTIERREZ,
JOSE ROLANDO GUTIERREZ
ORIANI,
ANABELLA VIAUD VDA. DE
ARIAS,
GINA MARIA UMANA DE
MORALES,
GINA DORDELLY DE UMANA,
TOM HAWK,
CLAUDE DUMONT DE HAWK,
MYLENA DEL SOCORRO ICAZA
DE LACAYO,
HUMBERTO JOSE LACAYO
DUBÓN,
MARIA AUXILIADORA HERDOCIA,
FILIBERTO ANTONIO HERDOCIA
LACAYO,
MARIA NORA ICAZA DE
HERDOCIA,

2

JUAN JOSE DOMENECH,
JAVIER CABRERA,
JUDITH CABRERA,
JOSE LUIS CABRERA,
ROBERTO DUMONT ALVAREZ,
CLAUDE DUMONT ALVAREZ,
ROBERTO DUMONT,
CATIA ESERSKI DE DUMONT,
ROBERTO JAVIER DUMONT
ESERSKI,
JOSE ADOLFO RUBIO,
MARIA TERESA OLMOS, and
VIVIAN TATIANA MOLINS DE
LAENNEC,

        Plaintiffs,

v.

WILLIS GROUP HOLDINGS
  PUBLIC LIMITED COMPANY,
  an Irish company,
WILLIS LTD.,
  a United Kingdom company, and
WILLIS OF COLORADO INC.,
  a Colorado corporation,

        Defendants.

## COMPLAINT

Plaintiffs file this action against WILLIS GROUP HOLDINGS PUBLIC LIMITED COMPANY ("Willis Group"), WILLIS LTD. ("Willis London"), and WILLIS OF COLORADO INC. ("Willis Colorado") (collectively "Willis" or "Defendants").

3

## INTRODUCTION

1.    This lawsuit arises out of the massive fraud on investors that was carried out by the web of companies known as Stanford Financial Group (collectively "Stanford Financial") and its principals, including convicted felon R. Allen Stanford. Investors were told that the certificates of deposit ("CDs") issued by one of Stanford Financial's companies, Stanford International Bank, were insured, safe, and highly liquid, and that Stanford International Bank could be trusted.

2.    Willis helped perpetuate this fraud on investors. From in or around August 2004 through 2008, Willis provided "safety and soundness" letters to Stanford Financial's agents on Willis letterhead and signed by a Willis executive. The letters identified purported insurance issued by Lloyd's of London and misled clients into believing their deposits were safe and insured. The letters proclaimed Stanford International Bank's employees to be "first class business people" and asserted that Stanford International Bank had undergone a "stringent Risk Management Review by an outside audit firm" in order to qualify for the insurance.

3.    In fact, the Stanford Financial CDs were not CDs at all, but unregistered, unregulated securities sold illegally from Stanford Financial's home base in the United States. These investments had no insurance and were fraught with risk. The supposed stringent "Risk Management Review" by an outside audit firm was never performed under Willis' watch, and what had been performed by a one-man shop in 2003 was neither stringent nor meaningful. And far from being a legitimate company that could pass a real audit, Stanford Financial was a fraud

4

that funneled deposits to Allen Stanford personally as supposed undocumented "loans," speculated in real estate, and undertook other high-risk investments.

4.      Willis provided these letters to Stanford Financial knowing that they were being used to induce investors to purchase the CDs. Willis knew and/or should have known that the statements in the letters were misleading and/or false.

5.      Plaintiffs were purchasers of such CDs who, as a result of Willis' participation in the Stanford Financial scheme, have collectively lost over $83.5 million.

## PARTIES

6.      Plaintiffs ANA LORENA NUILA de GADALA-MARIA and JOSE NUILA, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD account held in the name of Alnuga Trust.

7.      Plaintiffs JOSE NUILA FUENTES and GLADYS BONILLA de NUILA, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD account held in the name of Nuibo Investments Trust.

8.      Plaintiffs JOSE NUILA FUENTES and GLADYS ELENA NUILA de PONCE, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD account held in the name of Los Chimbombitos Trust.

9.      Plaintiffs JOSE RICARDO NUILA BONILLA and JOSE NUILA FUENTES, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD account held in the name of NP Investments Trust.

10.     Plaintiffs VICTOR JORGE SACA TUEME, CATALINA NUSTAS de SACA, and CLAUDIA LIZETE SACA de GALLEGOS, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the name of Luxor Trust.

11.     Plaintiffs VICTOR JORGE SACA TUEME and CATALINA NUSTAS de SACA, citizens and residents of El Salvador, are the beneficial owners of Stanford Financial CD accounts held in the names of Nordic Trust, Virgo Trust, Virgo II Trust, and Virgo III Trust.

12.     Plaintiffs VICTOR JORGE SACA TUEME, CATALINA NUSTAS de SACA, and JORGE VICTOR SACA NUSTAS, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the name of Campolon Trust.

13.     Plaintiffs VICTOR JORGE SACA TUEME, CATALINA NUSTAS de SACA, and MONICA EMELY SACA NUSTAS, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the name of Escorpion Trust.

14.     Plaintiff JORGE VICTOR SACA NUSTAS, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the names of Bety Trust and Ranger Trust.

15.     Plaintiff KATIA MARIA GHATTAS de SACA, a citizen and resident of El Salvador, is the beneficial owner of a Stanford Financial CD accounts held in the name of Vimase Trust.

16. Plaintiff MONICA EMELY SACA, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the names of Moemza Trust, Moemza II Trust and Moemza III Trust.

17. Plaintiff ELIAS SACA TUEME, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the name of Lancaster Overseas Trust.

18. Plaintiff EILEEN NICOLLE SACA de GIACOMAN, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the name of Eileen Saca Trust.

19. Plaintiff EDITH MARLEYN SACA BALLESTEROS a citizen and resident of El Salvador, is the beneficial owner of a Stanford Financial CD accounts held in the name of Mora Trust.

20. Plaintiff JENNY SOREL SACA BALLESTEROS, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the name of Parchi Trust.

21. Plaintiff OSCAR KAFATI, a citizen and resident of El Salvador, is the owner of a Stanford Financial CD account.

22. Plaintiff MAURICIO BIGIT POSADA, a citizen and resident of El Salvador, is the owner of a Stanford Financial CD account.

23. Plaintiffs JOSE ANTONIO MIGUEL BANDEK and EDUARDO ELIAS MIGUEL GIHA, citizens and residents of El Salvador, are the owners of a Stanford Financial CD account.

24. Plaintiffs ERNESTO URCUYO ABARCA and LORNA MARIA LACAYO de URCUYO, citizens and residents of Nicaragua, are the beneficial owners of a Stanford Financial CD account held in the name of Formentera Trust.

25. Plaintiff, STEMICH INTERNATIONAL HOLDINGS CORP., a Panamanian company with its principal place of business in Panama, is the owner of a Stanford Financial CD account.

26. Plaintiffs JOSE OFILIO LACAYO PEREZ and CELIA JOSEFINA VIVAS de LACAYO, citizens and residents of Nicaragua, are the owners of a Stanford Financial CD account.

27. Plaintiff ARIEL LACAYO, a citizen and resident of the United States of America, is the owner of a Stanford Financial CD account.

28. Plaintiff LEONEL LACAYO, a citizen and resident of the United States of America, is the owner of a Stanford Financial CD account.

29. Plaintiff MERCEDES ARGUELLO de LACAYO, a citizen and resident of the United States of America, is the owner of a Stanford Financial CD account.

30. Plaintiff INIZIA HOLDINGS, S.A., a Panamanian company with its principal place of business in Panama, is the owner of a Stanford Financial CD account.

31. Plaintiff OCEAN WATERS HOLDINGS, S.A., a Panamanian company with its principal place of business in Panama, is the owner of a Stanford Financial CD account.

32.    Plaintiffs BERNARDO RAMON CHAMORRO CUADRA and RHINA AUXILIADORA URCUYO de CHAMORRO, citizens and residents of Nicaragua, are the beneficial owners of a Stanford Financial CD account held in the name of Adisa Trust.

33.    Plaintiff BRAULIO VARGAS, a citizen and resident of El Salvador, is the owner of a Stanford Financial CD account.

34.    Plaintiff FRANCISCO ROBERTO DUEÑAS FORTUNA, a citizen and resident of the United States of America, is the beneficial owner of a Stanford Financial CD account held in the name of Santa Elena Trust.

35.    Plaintiff GUILLERMO ACETO MARINI, a citizen and resident of El Salvador, is the beneficial owner of a Stanford Financial CD accounts held in the names of Aceto Marini Trust and Gamarini Trust.

36.    Plaintiffs MARTA ORIANI de GUTIERREZ LOPEZ, JOSE ROLANDO GUTIERREZ ORIANI, and CARLOS ARMANDO GUTIERREZ ORIANI, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the name of Mihita 2 Trust.

37.    Plaintiffs ARELY ARGUELLO de GUTIERREZ and CARLOS ARMANDO GUTIERRZ ORIANI, citizens and residents of El Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the names of Cheles Trust and Cheles for Mama Trust.

38.    Plaintiffs JOSE ROLANDO GUTIERREZ ORIANI and DORA ERNESTINA ECHEVARRIA CAÑAS de GUTIERREZ, citizens and residents of El

Salvador, are the beneficial owners of a Stanford Financial CD accounts held in the names of Gutech Trust.

39.    Plaintiff ANABELLA VIAUD VDA. de ARIAS, a citizen and resident of El Salvador, is the beneficial owner of a Stanford Financial CD accounts held in the names of Los Pinos Trust.

40.    Plaintiff GINA MARIA UMANA de MORALES, a citizen and resident of the United States of America, is the owner of a Stanford Financial CD account.

41.    Plaintiff GINA DORDELLY de UMANA, a citizen and resident of the United States of America, is the owner of a Stanford Financial CD account.

42.    Plaintiffs TOM HAWK and CLAUDE DUMONT de HAWK, citizens and residents of El Salvador, are the beneficial owners of Stanford Financial CD accounts held in the names of Lemony Trust and Maggi Trust.

43.    Plaintiff, MYLENA del SOCORRO ICAZA de LACAYO, a citizen and resident of Nicaragua, is the beneficial owner of a Stanford Financial CD accounts held in the name of Piliway Trust.

44.    Plaintiffs HUMBERTO JOSE LACAYO DUBON and MYLENA del SOCORRO ICAZA de LACAYO, citizens and residents of Nicaragua, are the beneficial owners of a Stanford Financial CD accounts held in the name of Caridad Trust.

45.    Plaintiff MARIA AUXILIADORA HERDOCIA, a citizen and resident of Nicaragua, is the beneficial owner of a Stanford Financial CD accounts held in the name of Los Lagos Trust.

46.    Plaintiffs FILIBERTO ANTONIO HERDOCIA LACAYO and MARIA NORA ICAZA de HERDOCIA, citizens and residents of Nicaragua, are the beneficial owners of a Stanford Financial CD accounts held in the name of Cathedral Trust.

47.    Plaintiff HUMBERTO JOSE LACAYO DUBON, a citizen and resident of Nicaragua, is the beneficial owner of a Stanford Financial CD accounts held in the name of Telica Trust.

48.    Plaintiff JUAN JOSE DOMENECH, a citizen and resident of El Salvador, is the owner of a Stanford Financial CD account.

49.    Plaintiff JAVIER CABRERA, a citizen and resident of El Salvador, and JUDITH CABRERA, a citizen and resident of Spain, are the beneficial owners of a Stanford Financial CD accounts held in the name of Caroca Trust.

50.    Plaintiff JOSE LUIS CABRERA, a citizen and resident of El Salvador, is the beneficial owner of a Stanford Financial CD accounts held in the name of CYC Trust.

51.    Plaintiff ROBERTO DUMONT ALVAREZ, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the name of Cipotes Trust.

52.    Plaintiffs ROBERTO DUMONT ALVAREZ and CLAUDE DUMONT ALVAREZ, citizens and residents of El Salvador, are the beneficial owners of Stanford Financial CD accounts held in the name of Dual Trust.

53.   Plaintiffs ROBERTO DUMONT, CATIA ESERSKI de DUMONT, and ROBERTO JAVIER DUMONT ESERSKI, citizens and residents of El Salvador, are the beneficial owners of Stanford Financial CD accounts held in the name of Duesa Trust.

54.   Plaintiffs JOSE ADOLFO RUBIO and MARIA TERESA OLMOS, citizens and residents of El Salvador, are the beneficial owners of Stanford Financial CD accounts held in the name of Tidibado Trust.

55.   Plaintiff VIVIAN TATIANA MOLINS de LAENNEC, a citizen and resident of El Salvador, is the beneficial owner of Stanford Financial CD accounts held in the name of Shanti Trust.

56.   Defendant WILLIS GROUP HOLDINGS PUBLIC LIMITED COMPANY ("Willis Group") is a company organized under the laws of Ireland, with its principal place of business in London, England. (It was formerly known as Willis Group Holdings Limited and incorporated under Bermuda law before it reincorporated in Ireland on December 31, 2009.) Willis Group is a publicly owned company that trades on the New York Stock Exchange under the symbol "WSH." Willis Group is the parent company of Willis London and Willis Colorado.

57.   Defendant WILLIS LTD. ("Willis London") is a United Kingdom company with its principal place of business in London, England.

58.   Defendant WILLIS OF COLORADO INC. ("Willis Colorado") is a Colorado corporation with its principal place of business in Denver, Colorado.

## JURISDICTION AND VENUE

59.     This Court has subject matter jurisdiction over this dispute.  This is an action for damages alleging violations of Florida common law, and the Complaint seeks damages in excess of fifteen thousand dollars ($15,000), exclusive of interest, costs, and attorneys' fees.

60.     This Court has personal jurisdiction over the non-resident Defendants under the Florida Long-Arm Jurisdiction Statute, Florida Statutes § 48.193. Defendants Willis Group, Willis London and Willis Colorado jointly and individually committed tortious acts within the State of Florida – namely, the issuance of the Willis Letters for use by Stanford Financial's agents in Miami.  Willis Group is also subject to personal jurisdiction as a result of the tortious actions in Florida of its agents, Willis London and Willis Colorado.

61.     In addition, Willis Group has–both directly and via the actions of its subsidiaries, affiliates, and agents–operated, conducted, engaged in, or carried on a business or business venture in this state.  Among other things, Willis Group has a market capitalization of almost $6 billion and about 173 million shares outstanding and makes its shares available for trading on national exchanges that trade with residents of Florida.  Willis Group has multiple subsidiaries and agents in Florida, including Willis of Florida, Inc., with a principal office in Tampa and additional offices in Naples, Miami, Winter Haven, Jacksonville, West Palm Beach, Fort Lauderdale, Gainesville, Lake Mary, Sarasota, and Vero Beach.   Based on its general and specific contacts with the State of Florida, Willis Group has

purposefully availed itself of the privilege of conducting activities within Florida and has established minimum contacts with Florida.

62.    Venue is proper in Miami-Dade County, Florida, because acts, events, and omissions giving rise to this action occurred in Miami-Dade County, Florida.

## FACTUAL BACKGROUND

**A.    Plaintiffs' Purchase of Stanford Financial CDs.**

63.    Plaintiffs were each solicited by financial advisors from Stanford Financial's Miami office to invest in Stanford Financial CDs.

64.    As part of the inducement to invest in Stanford Financial CD's, each of the Plaintiffs was either provided with or shown, on one or more occasions, a Willis Letter.  The Willis Letters were substantively identical, with the only differences being the date and the addressee, and read as follows:

> We are the insurance broker for Stanford International Bank and find them to be first class business people.  We have placed the following coverages that are currently in effect:
>
> 1.    Directors and Officers Liability Insurance with Lloyds of London (Expiration [date]):
> 2.    Bankers Blanket Bond with Lloyds of London (Expiration [date]);
>
> All of these coverages have been in effect for various terms for the past six to twelve years, however, no representations can be made that such coverages will remain in effect.
>
> In order to qualify for above coverages, the Bank underwent a stringent Risk Management Review conducted by an outside audit firm.
>
> We have found that all our dealings with the Bank have been conducted in a professional and satisfactory manner.

14

65.    Relying on the representations in the Willis Letter, the Plaintiffs each made substantial purchases of Stanford Financial CDs.  In total, their losses on these CDs (including accrued interest) are in excess of $83.5 million.

**B.    The Stanford Financial Fraud.**

66.    Stanford Financial, using its various affiliates and with the assistance of others, had in reality conducted a massive fraud through which investors were sold CDs under false assurances that the CDs were safe and insured.  The investors' deposits were funneled to Allen Stanford personally as supposed undocumented "loans," were used to speculate in real estate and other high-risk investments, and were used to perpetuate the high-flying Stanford Financial image.

67.    Stanford Financial's earnings and assets were insufficient to meet its payment obligations under the CDs.  So, in classic Ponzi scheme fashion, Stanford Financial paid out interest, CD redemptions, and extravagant operating expenses from new CD sales to investors.  Stanford Financial's financial records were forged to reflect the necessary level of assets to keep the Ponzi scheme going.

68.    Stanford Financial's operations in Miami were an integral component in the scheme, as the Stanford Financial Miami advisors sold more than $1 billion in CDs from their Miami offices.

69.    The Securities and Exchange Commission exposed the massive fraud by filing suit on February 17, 2009, seizing Stanford Financial's assets and obtaining the appointment of a receiver over its operations.  *See SEC v. Stanford International Bank, Ltd, et al.*, Case No. 3:09-CV-298-N (N.D. Tex).  The federal

court in which the SEC action was brought has found Stanford Financial to have "operated as a classic Ponzi scheme." *See* Preliminary Injunction [Doc. 456] in *Janvey v. Alguire, et al.*, Case No. 3:09-CV-724 (U.S. District Court, Northern District of Texas).

70. Stanford Financial's principals, including Allen Stanford, have either been convicted at trial or have pled guilty to numerous felony counts in connection with Stanford Financial's operations and CD sales and are serving lengthy prison sentences.

**C.   Willis' Role in the Stanford Financial Fraud**

71. Willis played a crucial role in the Stanford Financial fraud. The bank Stanford Financial used to issue the purported CDs was not insured by the Federal Deposit Insurance Corporation ("FDIC"), because it was a private offshore bank. This was an impediment to Stanford Financial's ability to market and sell the CDs, and one Stanford Financial fought hard to overcome.

72. One way Stanford Financial combated the lack of FDIC insurance was by misleading clients into believing that its purported CDs had coverage that was equivalent or superior to FDIC insurance. Stanford Financial was able to accomplish this with the willing participation and assistance of Willis. Acting on behalf of Stanford Financial, Willis touted supposed insurance "coverages" it claimed to have secured through Lloyd's of London, while Stanford Financial claimed its CDs were even safer than U.S. bank-issued CDs because of the unique insurance policies Willis had obtained.

16

73.     Beginning in or about August 2004 and continuing through 2008, Willis provided Stanford Financial with an undated form letter vouching for the supposed integrity of Stanford International Bank and identifying specific insurance policy coverages Willis claimed to have placed on behalf of Stanford International Bank (the "Willis Letter"). The Willis Letter appeared on Willis letterhead, and with Willis' logo, and contained the very same assertions, promoting Stanford International Bank's purported insurance policies through Lloyd's of London and vouching for Stanford International Bank's and its principals' integrity, as the letters provided or shown to Plaintiffs.

74.     Stanford Financial, both through its training materials and in live training sessions, instructed its financial advisors to tout the existence of the supposed insurance coverages and to make use of the Willis Letters when needed to make sales.

75.     Miami financial advisors working for Stanford Financial routinely used the Willis Letter to assure their Latin American clients that the supposed Stanford Financial CDs were legitimate, safe and insured. For investors with over $1 million in the CD accounts, Stanford Financial's financial advisors could obtain from Willis a letter addressed personally to the client.

76.     The Willis Letters were specifically designed to win investors' trust and confidence in Stanford Financial's fraudulent scheme. Willis, an internationally known and respected insurance broker, vouched for Stanford International Bank's supposed professionalism and business integrity while

highlighting alleged "coverages" from one of the most venerable and well-known insurance markets in the world, Lloyd's of London. Willis' message to potential investors was this: trust us, you can invest with confidence and security in Stanford Financial CDs.

77.     Willis knew that its letters were being used to solicit new investors in Stanford Financial's purported CDs. The letters were written specifically to be used with third parties; they were being addressed to individual investors in many cases; and they were prepared in bulk with the addressee left blank for Stanford Financial to fill in the investor names. Willis even provided Stanford Financial with Willis envelopes to use to deliver or send the letters.

78.     In reality, there was nothing safe, "first class," or satisfactory, let alone insured, about Stanford Financial or its CDs. Although the Willis Letters were being sent or shown to prospective purchasers of CDs to lead them to believe their investment was safe and insured, client deposits in fact had no insurance coverage.

79.     In addition, far from having passed a "stringent Risk Management Review conducted by an outside audit firm," there was no real outside audit. The only limited scope review performed by a third party was done in 2003 by a one-man operation in Florida called Stogniew & Associates that resulted in a flimsy report filled with disclaimers. Notably, there was never even such a Risk Management Review performed by Stogniew & Associates during Willis' tenure with Stanford Financial.

18

80.   Nor were the principals of Stanford International Bank "first class business people." In fact, Stanford Financial was violating U.S. securities laws by selling illegal, unregistered and unregulated securities.   Stanford Financial's principals were Allen Stanford and James Davis, the architects of a massive Ponzi scheme who had a long history of fraudulent dealings and who are now serving lengthy prison sentences for their illegal activities, while Stanford Financial's "board" included an 85-year-old cattle rancher and a former car salesman.

81.   Willis benefitted handsomely in the insurance policies that it did sell to Stanford Financial, receiving substantial commissions on the premium payments.

82.   Each of the Defendants, individually and jointly, is liable for the actions and omissions described above.   Officers and agents of each of the Defendants were personally and directly involved in the decision to partner with Stanford Financial, in the subsequent review and analysis of certain of its operations, and in the subsequent provision of insurance brokerage services to Stanford Financial.   The "Willis Service Team for Stanford" included a representative from both Willis Colorado and Willis London underneath an officer of Willis Group as the Account Director.   The commissions earned from Stanford Financial were shared, in descending order, by Willis London, Willis Group and Willis Colorado.

## CAUSES OF ACTION

### COUNT I

### Information Negligently Supplied for the Guidance of Others

83.　Plaintiffs repeat and re-allege paragraphs 1 through 82 above.

84.　This is a cause of action under Section 552 of the RESTATEMENT (SECOND) OF TORTS.

85.　Willis, in the course of their business, profession or employment, or in a transaction in which Willis had a pecuniary interest, supplied false and misleading information for the guidance of purchasers of Stanford Financial CDs, including Plaintiff.

86.　Willis had a duty to exercise reasonable care or competence in communicating such information and breached that duty by failing to exercise reasonable care or competence in communicating such information.

87.　Plaintiffs justifiably relied upon the information supplied by Willis, causing each of them pecuniary loss.

WHEREFORE, Plaintiffs each demand a judgment in his or her respective favor and against Willis (1) awarding Plaintiffs compensatory damages, interest and costs; and (2) awarding Plaintiffs any and all other relief the Court may deem appropriate.

### COUNT II

### Negligent Misrepresentation

88.　Plaintiffs repeat and re-allege paragraphs 1 through 82 above.

89.     Defendants, in the course of a business relationship with Stanford Financial and their affiliates and agents made material misrepresentations to Plaintiffs through the Willis Letters, which Defendants knew and/or should have known, and had reason to expect, would be transmitted to Stanford Financial investors, including Plaintiffs.

90.     Defendants knew of the misrepresentations, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false and misleading.

91.     Defendants made the misrepresentations with the intention and expectation that investors would receive the statements and rely on them in deciding to invest in Stanford Financial CDs.

92.     Plaintiffs each suffered damage in justifiable reliance on Defendants' statements.

WHEREFORE, Plaintiffs each demands a judgment in his or her respective favor and against Willis (1) awarding Plaintiffs compensatory damages, interest, and costs; and (2) awarding Plaintiffs any and all other relief the Court may deem appropriate.

COUNT III

**Aiding and Abetting Fraud**

93.     Plaintiffs repeat and re-allege paragraphs 1 through 82 above.

94.     Stanford Financial and their affiliates and agents engaged in a massive fraud that resulted in Plaintiffs suffering substantial damage.

21

95.     Defendants had actual knowledge of the fraud.

96.     Defendants provided substantial assistance to advance the commission of the fraud by knowingly issuing letters to Plaintiffs or Willis investors generally with material misrepresentations and omissions of fact.

97.     Plaintiffs each suffered damage in justifiable reliance on Defendants' statements.

WHEREFORE, Plaintiffs each demand a judgment in his or her respective favor and against Willis (1) awarding Plaintiffs compensatory damages, interest, and costs; and (2) awarding Plaintiffs any and all other relief the Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all matters so triable as a matter of right.

Date: February 14th, 2013.

Respectfully submitted:

HOMER & BONNER, P.A.
The Four Seasons Tower
1441 Brickell Avenue, Suite 1200
Miami, Florida 33131
Tel: (305) 350-5100
Fax: (305) 982-0064

By: _____
Luis Delgado
Florida Bar No. 475343
Christopher King
Florida Bar No. 0123919

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33132
Tel: (305) 476-7400
Fax: (305) 476-7444

By: _____
Ervin González
Florida Bar No. 500720
Curtis Miner
Florida Bar No. 885681

23